AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. |
| Black 2013 Chevy Silverado bearding | ) |
| Arizona Tag 7PA0KB, and VIN | ) |
| IGC1KYE85DF108595 | ) |

Case No. **22-9130 MB**

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Arizona _____ *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated by reference

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before     5/13/2022
                                                                                        *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.          ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty in the District of Arizona _____ .
                                                *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                                    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     4/29/2022@10:22am          *E.S.Willett*
                                                                            *Judge's signature*

City and state:     Phoenix Arizona          EILEEN S. WILLETT, U.S. Magistrate Judge
                                                                    *Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

A 2013 Black Chevy Silverado bearding Arizona Tag 7PA0KB, and VIN IGC1KYE85DF108595 currently in the custody of Phoenix Police Department.

## ATTACHMENT B

### PROPERTY TO BE SEIZED

Agents are authorized to search for evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license), Title 18 U.S.C. § 841 (a)(1) possession with intent to distribute a narcotic, and 18 U.S.C. § 924(d) (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)); and, as further described in the affidavit of probable cause including:

1. Any firearms including firearms parts, frames, receivers, accessories, magazines, cases, boxes;

2. Any ammunition and components including, bullets, brass, casings, boxes, and cases;

3. US Currency;

4. Concealed Weapons Permit.

5. The following records relating to the violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license) and 18 U.S.C. § 924(d) (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)):

   a. Records, documents, notes, receipts, ledgers, invoices, indicia, or photographs showing the acquisition or sale of any firearms and firearm parts;

   b. Receipts, bank account records, buyer or seller lists, money transfer records, agreements for storage facilities, records of mail service, ledgers, and notebooks showing the acquisition and/or disposition of firearms and firearm parts;

c.  Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, ordering, and purchase of firearms, firearm accessories, or ammunition;

d.  Ledgers, customer lists, contact lists, inventory lists, vendor lists, or any notes containing the individual names of such persons, telephone numbers or addresses of such persons; and,

e.  Bank documents and records, financial documents and records, and any records and documents relating to any bank or financial transactions, including: correspondence, signature cards and applications for all credit card accounts, investment accounts, and retirement accounts; copies of monthly, quarterly, yearly or periodic account statements; pre-paid credit/debit cards; money wrappers; copies of check journals, check ledgers, checkbooks, check registers, deposit tickets, deposit items, credit memos, debit memos, canceled checks, loan applications, financial statements, mortgage or promissory notes; copies of loan ledger accounts; copies of annual loan statements; application for bank drafts, cashier's checks, and foreign drafts; and records relating to employment, wages earned and paid, business income earned, and other compensation records.

6.  Records indicating occupancy, residency, rental or ownership of the search location, including utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys;

7.  Any and all records pertaining to the rental of self-storage units and post office boxes or mailboxes;

8.  Electronic equipment, including cellular telephones, computers, disks, thumb drives, and any media storage device, GPS devices and their memory, and related manuals used to generate, transfer, count, record or store the information described in this attachment.  For any computer or electronic storage medium whose seizure is otherwise authorized by this warrant, and any computer or electronic storage

medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, the "Electronic Storage Device"), this warrant also authorizes the seizure of the following:

a.      Evidence of who used, owned, or controlled the Electronic Storage Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.      Call details including call history, duration of calls, text messages, and text message history;

c.      Electronic correspondence and communications stored on, or accessed through, the Electronic Storage Device relating to the procurement of export-controlled items, to include e-mails and attached files, text messages, any Short Message Service messages (SMS), Instant Messages (IM), Multimedia Message Service messages, or similar text or electronic messages made through additional applications from which communication can be made, and instant messaging logs;

d.      Contact lists stored on or accessed through the Electronic Storage Device, to include telephone and e-mail contact names, telephone numbers, addresses, and e-mail addresses;

e.      Evidence of software that would allow others to control the Electronic Storage Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

f.      Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

g.    Evidence indicating how and when the Electronic Storage Device was accessed or used to determine the chronological context of Electronic Storage Device access, use, and events relating to crime under investigation and to the user of the Electronic Storage Device;

h.    Evidence of the attachment to the Electronic Storage Device of other storage devices or similar containers for electronic evidence;

i.    Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Electronic Storage Device;

j.    Evidence of the times the Electronic Storage Device was used;

k.    Passwords, encryption keys, and other access devices that may be necessary to access the Electronic Storage Device;

l.    Documentation and manuals that may be necessary to access the Electronic Storage Device or conduct an examination of the Electronic Storage Device;

m.    Any records of or information about Internet Protocol addresses used by the Electronic Storage Device;

n.    Contextual information necessary to understand the evidence described in this attachment; and,

o.    Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

9.    Items used for identification, including identification cards under fictitious names, and any other type of false identifying documents.

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.   22-9130 MB |
| Black 2013 Chevy Silverado bearding Arizona Tag 7PA0KB, and VIN IGC1KYE85DF108595 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See attachment A, incorporated by reference.

located in the _____ District of _____ Arizona _____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 922(o) | Possession or Transfer of a Machinegun |
| Title 18 U.S.C. § 924(a)(1)(A) | Knowingly making any false statement with respect to the information required by federal law to be kept by the holder of a Federal Firearms License (FFL) |

The application is based on these facts:
See attached Affidavit, incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Brett Day*
Reviewed by Brett A. Day, AUSA

CHRISTIAN VILLARR  Digitally signed by CHRISTIAN VILLARRL
Date: 2022.04.28 22:07:34 -07'00'

*Applicant's signature*

Christian Villarruel, Special Agent, ATF
*Printed name and title*

Sworn to and signed electronically.

Date: 4/29/2022@10:22am

*EsWillett*
*Judge's signature*

City and state:  Phoenix, Arizona

EILEEN S. WILLETT, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

A 2013 Black Chevy Silverado bearding Arizona Tag 7PA0KB, and VIN IGC1KYE85DF108595 currently in the custody of Phoenix Police Department.

**ATTACHMENT B**

**PROPERTY TO BE SEIZED**

Agents are authorized to search for evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license), Title 18 U.S.C. § 841 (a)(1) possession with intent to distribute a narcotic, and 18 U.S.C. § 924(d) (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)); and, as further described in the affidavit of probable cause including:

1.  Any firearms including firearms parts, frames, receivers, accessories, magazines, cases, boxes;

2.  Any ammunition and components including, bullets, brass, casings, boxes, and cases;

3.  US Currency;

4.  Concealed Weapons Permit.

5.  The following records relating to the violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license) and 18 U.S.C. § 924(d)   (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)):

    a.  Records, documents, notes, receipts, ledgers, invoices, indicia, or photographs showing the acquisition or sale of any firearms and firearm parts;

    b.  Receipts, bank account records, buyer or seller lists, money transfer records, agreements for storage facilities, records of mail service, ledgers, and notebooks showing the acquisition and/or disposition of firearms and firearm parts;

c.   Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, ordering, and purchase of firearms, firearm accessories, or ammunition;

d.   Ledgers, customer lists, contact lists, inventory lists, vendor lists, or any notes containing the individual names of such persons, telephone numbers or addresses of such persons; and,

e.   Bank documents and records, financial documents and records, and any records and documents relating to any bank or financial transactions, including: correspondence, signature cards and applications for all credit card accounts, investment accounts, and retirement accounts; copies of monthly, quarterly, yearly or periodic account statements; pre-paid credit/debit cards; money wrappers; copies of check journals, check ledgers, checkbooks, check registers, deposit tickets, deposit items, credit memos, debit memos, canceled checks, loan applications, financial statements, mortgage or promissory notes; copies of loan ledger accounts; copies of annual loan statements; application for bank drafts, cashier's checks, and foreign drafts; and records relating to employment, wages earned and paid, business income earned, and other compensation records.

6.   Records indicating occupancy, residency, rental or ownership of the search location, including utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys;

7.   Any and all records pertaining to the rental of self-storage units and post office boxes or mailboxes;

8.   Electronic equipment, including cellular telephones, computers, disks, thumb drives, and any media storage device, GPS devices and their memory, and related manuals used to generate, transfer, count, record or store the information described in this attachment. For any computer or electronic storage medium whose seizure is otherwise authorized by this warrant, and any computer or electronic storage

medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, the "Electronic Storage Device"), this warrant also authorizes the seizure of the following:

a.      Evidence of who used, owned, or controlled the Electronic Storage Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.      Call details including call history, duration of calls, text messages, and text message history;

c.      Electronic correspondence and communications stored on, or accessed through, the Electronic Storage Device relating to the procurement of export-controlled items, to include e-mails and attached files, text messages,  any Short Message Service messages (SMS), Instant Messages (IM), Multimedia Message Service messages, or similar text or electronic messages made through additional applications from which communication can be made, and instant messaging logs;

d.      Contact lists stored on or accessed through the Electronic Storage Device, to include telephone and e-mail contact names, telephone numbers, addresses, and e-mail addresses;

e.      Evidence of software that would allow others to control the Electronic Storage Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

f.      Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

g.      Evidence indicating how and when the Electronic Storage Device was accessed or used to determine the chronological context of Electronic Storage Device access, use, and events relating to crime under investigation and to the user of the Electronic Storage Device;

h.      Evidence of the attachment to the Electronic Storage Device of other storage devices or similar containers for electronic evidence;

i.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Electronic Storage Device;

j.      Evidence of the times the Electronic Storage Device was used;

k.      Passwords, encryption keys, and other access devices that may be necessary to access the Electronic Storage Device;

l.      Documentation and manuals that may be necessary to access the Electronic Storage Device or conduct an examination of the Electronic Storage Device;

m.      Any records of or information about Internet Protocol addresses used by the Electronic Storage Device;

n.      Contextual information necessary to understand the evidence described in this attachment; and,

o.      Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

9.      Items used for identification, including identification cards under fictitious names, and any other type of false identifying documents.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Christian Villarruel being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      This affidavit is submitted in support of an application for a warrant to search the following property, which is further described in Attachment A, for evidence of a violation of Title 18 U.S.C § 371 (conspiracy to commit any offense against the United States), 18 U.S.C. § 924(a)(1)(A) (False statements in records required to be kept by an FFL), 18 USC §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D) (Dealing Firearms without a License), 18 U.S.C. § 922(a)(6) (False Statement or Identification in Acquisition or Attempted Acquisition of a Firearm), and 18 U.S.C. § 922(o) and 924(a)(2) (Transfer or possession of machinegun) in the black 2013 Chevy Silverado bearing Arizona tag 7PA0KB and VIN 1GC1KYE85DF108595 (Hereinafter "**Subject Vehicle**").

2.      Your Affiant is a Special Agent with The Bureau of Alcohol, Tobacco, Firearms, and Explosives and has been since May 2019. I have received training in the enforcement of the federal firearms and explosive laws.  I am presently a member of the ATF Phoenix Field Division's Group VII. As a Special Agent of the ATF, my duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal and state laws. I have participated in the use of cooperating informants, undercover agents, video surveillance, wiretaps, GPS tracking devices, search warrants, and audio surveillance, among other law enforcement techniques, during the course of my career with ATF.  Additionally, I have participated in numerous controlled

buys of firearms and narcotics from targets of law enforcement investigations. Based on training and experience, I am familiar with methods used for firearms trafficking and narcotics trafficking.

3.     The facts contained in this Affidavit are based in part on information provided to your Affiant by other law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information learned through seizures of contraband. Your Affiant also relies on my own experience, training, and background in evaluating this information.

4.     This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all my knowledge of or investigation into this matter. The statements set forth in this affidavit are based upon my investigation to date, my experience, my training, and other reliable sources of information relative to this investigation.

## PROPERTY TO BE SEARCHED

5.     The property to be searched is a black 2013 Chevy Silverado bearing Arizona tag 7PA0KB as more fully described in Attachment A, incorporated herein by reference.

## ITEMS TO BE SEIZED

6.     The items to be seized are described in Attachment B, incorporated herein by reference.

## **PROBABLE CAUSE**

7.     As of June 2021, ATF has been investigating the activities of Omar MARTINEZ and associates regarding violations of 18 U.S.C. § 924(a)(1)(A), false statements in records required to be kept by an FFL, 18 USC §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D), dealing Firearms without a License, 18 U.S.C. § 922(a)(6), false statement or identification in acquisition or attempted acquisition of a firearm, and 18 U.S.C. § 922(o) and 924(a)(2), transfer or possession of machinegun.

8.     On June 08, 2021, SA Villarruel received information from the ATF Crime Gun Intelligence Center (CGIC) regarding an individual identified as Omar MARTINEZ (MARTINEZ). According to the information from CGIC, MARTINEZ had 29 identified firearm purchases and eight Multiple Sales from April 14, 2021 to June 2, 2021. FFLs are required to report the sale of two or more handguns if they occur at the same time or within five consecutive business days of each other. ATF uses the information gathered from multiple sales transactions to investigate possible firearms trafficking cases. During this time period, MARTINEZ had spent in excess of $10,600 in cash on the firearms.

9.     A review of the Federal Licensing System (FLS) which keeps track of all Federal Firearms Licenses (FFLs) revealed that MARTINEZ is/was not an FFL. A review of Arizona Department of Economic Security Records (DES) for MARTINEZ showed no reported wages or income at the time he purchased these firearms. On each of the ATF Form 4473s (Firearm Transaction Record) that MARTINEZ executed to acquire the

firearms, MARTINEZ listed his current address as 121 W Harding Ave, Coolidge, AZ 85128. In addition, MARTINEZ listed his phone number on multiple ATF Form 4473s as 520-759-6284 (Hereinafter "Target Cellular Telephone").

10. On April 14, 2022, Your Affiant was notified by ATF Las Vegas that an FFL had information regarding an individual identified as MARTINEZ. Your Affiant contacted the FFL and spoke with the FFL owner.

11. The owner explained he had met MARTINEZ while the owner was working the Crossroads of the West Gun Show on January 02, 2022. The owner explained MARTINEZ purchased two firearms from his vendor booth. After purchasing the two firearms, MARTINEZ asked if the owner would be returning to the next gun show in Arizona. MARTINEZ stated he wanted to purchase seven Glock 17 pistols and seven AK-47 Hellpup pistols. The owner found the order to be suspicious since the firearms were of the same make, model, and caliber, as well as the amount of firearms MARTINEZ was wanting to purchase.

12. On or around January 14, 2022, the owner stated he had returned to work in another Arizona gun show where the owner once again met with MARTINEZ. The owner stated MARTINEZ had purchased 13 firearms from him including seven Glock 17 pistols, and 6 AK-47 Hellpup pistols.

13. Upon purchasing the firearms, MARTINEZ told the owner he wanted to purchase RPD rifles. An RPD rifle is a belt-fed semi-automatic rifle that can be easily converted to a fully automatic machinegun. The owner asked MARTINEZ what price MARTINEZ was looking to pay for the rifles so that the owner could determine if

MARTINEZ was inquiring about purchasing semiautomatic rifles or inquiring about fully automatic machineguns. The owner stated MARTINEZ had insinuated that money was not an object. The owner told MARTINEZ he would be in contact if he was able to find a seller that could fulfill MARTINEZ's request of RPD rifles. Your Affiant asked if the owner would be willing to introduce an ATF Undercover (UC) Agent to MARTINEZ as a possible seller of firearms, and the owner agreed.

14.     On January 17, 2022, the owner notified Your Affiant he had contacted MARTINEZ on the telephone. During the conversation, the owner told MARTINEZ he found a seller of RPD rifles that could shoot 700 rounds per minute if MARTINEZ was interested in purchasing them.

15.     The following day on January 18, 2022, ATF UC1 contacted MARTINEZ on the telephone. UC1 stated they had received MARTINEZ's phone number from the FFL owner. UC1 stated they were told MARTINEZ was interested in purchasing firearms that UC1 had access to. MARTINEZ stated he wanted to purchase AK rifles. UC1 stated they had some AK rifles that were machineguns. UC1 asked if MARTINEZ also wanted belt fed rifles, and MARTINEZ affirmed. MARTINEZ told UC1 that he bought, sold, and traded firearms.  MARTINEZ stated he was looking to purchase RPD rifles but was told he might need a tax stamp to purchase them. UC1 stated MARTINEZ could meet with UC1 to see the firearms UC1 had available.

16.     UC1 explained they did not like going to gun shows because they could be seen there. UC1 explained that he/she (UC1) preferred to keep things quiet, and MARTINEZ would not have to do the paperwork. MARTINEZ asked UC1 where he

would have to go to see the firearms. UC1 stated he/she (UC1) needed to be in Phoenix on Thursday to make a delivery of firearms. UC1 stated the firearms UC1 would show MARTINEZ were already sold to another purchaser. UC1 stated MARTINEZ could at least see the firearms UC1 had access to. UC1 stated MARTINEZ did not have to purchase any firearms but could make an order if he (MARTINEZ) wanted to.

17.     UC1 stated that they could fulfill the order within a week if MARTINEZ decided to purchase firearms. MARTINEZ agreed and stated he spent a lot of money. UC1 stated they could discuss firearms and prices when they met later in the week. UC1 informed MARTINEZ the RPD rifles that UC1 had access to were illegal. UC1 asked if MARTINEZ was still interested, and MARTINEZ stated "yes." UC1 repeated there was no pressure. MARTINEZ expressed interest in wanting to work with UC1. Over the next several days UC1 continued to communicate with MARTINEZ via text message. MARTINEZ and UC1 agreed to meet at an undisclosed ATF location in Phoenix, AZ on April 20, 2022.

18.     On April 20, 2022, MARTINEZ and another individual identified as JUAN RAMON MARTINEZ (Hereinafter "JUAN") arrived at the undisclosed ATF location in Phoenix, AZ in a Chevy Malibu bearing AZ tags CSW5483. A subsequent query of this vehicle showed the vehicle to be registered to JUAN.  Upon MARTINEZ and JUAN meeting with UC1 and UC2, both ATF UCs presented MARTINEZ and JUAN with various semiautomatic pistols and rifles of various make, model, and calibers. Afterwards, UC1 and UC2 presented various fully automatic machineguns to both MARTINEZ and JUAN. UC1 stated that if MARTINEZ wanted to place an order of firearms, UC1 could

have the firearms within a week. UC1 stated MARTINEZ needed to be aware that the machineguns were highly illegal if MARTINEZ did want them. MARTINEZ asked UC1 the price of a fully automatic Saco, MK-43, machinegun, and UC1 stated $12,000. MARTINEZ stated he would want to place an order for one. JUAN instructed MARTINEZ to get two instead, and MARTINEZ agreed. UC1 and UC2 stated they would meet with MARTINEZ and JUAN the following week to fulfill their order of the machineguns. After inspecting the firearms, MARTINEZ and JUAN departed the undisclosed ATF location. MARTINEZ continued to text with UC1 to inquire about other machineguns that UC1 might have available.

19.     On March 21, 2022, MARTINEZ contacted UC1 via text message. MARTINEZ asked how much UC1 would charge for 8 AK-47 rifles and an M-60 rifle. MARTINEZ stated he was not sure if he (MARTINEZ) would have enough money to purchase all the firearms. UC1 stated that a fully automatic AK-47 rifle would cost MARTINEZ $3,000.

20.     On March 22, 2022, MARTINEZ texted UC1 and stated he wanted to order one fully automatic AK-47 rifle, one fully automatic M-60 rifle, and seven AK-47 semiautomatic rifles. UC1 stated he/she (UC1) would have the firearms ready for MARTINEZ the following week and that the total price would be $20,000, to which MARTINEZ agreed.

21.     On March 26, 2022, UC1 notified MARTINEZ that MARTINEZ's shipment of firearms had arrived. UC1 stated they could meet MARTINEZ the following day at the undisclosed ATF location at 2:00 PM, and MARTINEZ agreed. MATRTINEZ also

inquired about the price for fully automatic Beretta 92 pistols. UC1 stated UC1 would try and find a price for MARTINEZ.

22.    The following day on March 27, 2022, at approximately 2:40 PM, MARTINEZ was observed by ATF mobile surveillance walking towards the undisclosed ATF location. After greeting MARTINEZ, UC1 began to show MARTINEZ a semiautomatic AK-47 rifle that MARTINEZ had ordered. UC-1 and UC-2 then showed MARTINEZ a fully automatic AK-47 rifle and explained the difference between the firearms. UC-1 explained that the fully automatic AK-47 rifle was illegal. MARTINEZ told UC-1 and UC-2 that he wanted to open his own gun store in Coolidge, Arizona. Afterwards, MARTINEZ withdrew a bundle of money from his pocket and handed it UC-1 to count. MARTNEZ stated he had forgotten the other part of the money inside the vehicle MARTINEZ came in. UC-1 and UC-2 began to count the money and stated MARTINEZ had given them a total of $10,100.

23.    MARTINEZ repeated to UC-1 and UC-2 he had plans to open his own gun store. MARTINEZ stated he thought about displaying the fully automatic rifle in the front of the store. UC-1 and UC-2 stated that MARTINEZ should not display the firearm because it was illegal to have in his (MARTINEZ) possession. UC-1 stated the fully automatic M-60 rifle MARTINEZ was purchasing could not be registered.

24.    Shortly afterwards, JUAN arrived at the undisclosed ATF location in the **Subject Vehicle**. A subsequent query of the **Subject Vehicle** showed JUAN to be the registered owner. After parking the vehicle, JUAN exchanged greeting with UC-1 and UC-2. JUAN then withdrew a bundle of money from his back pocket and handed it to

MARTINEZ. MARTINEZ then handed the bundle of money to UC-2 so that UC-2 could count the remaining money needed to purchase the firearms.

25.     At that time, UC-1 began to explain to JUAN how to distinguish the difference between a fully automatic AK-47 rifle and a semiautomatic AK-47 rifle. UC-1 stressed JUAN needed to be careful what he did with the fully automatic AK-47 rifle because it was illegal to have, and JUAN responded in the affirmative. After showing JUAN the remaining firearms, including the fully automatic M-60 rifle, JUAN inquired about Barrett .50 caliber rifles. UC-1 and UC-2 excused themselves to retrieve a Barrett .50 caliber rifle to show JUAN. At that time, members of the ATF Special Response Team (SRT) executed the federal arrests of MARTINEZ and JUAN. Afterwards, MARTINEZ and JUAN were transported to Central Arizona Florence Correctional Complex and taken into federal custody and the **Subject Vehicle** was impounded at a Phoenix Police Department (PPD) impound.

CHRISTIAN VILLARRUI Digitally signed by CHRISTIAN VILLARR
Date: 2022.04.28 21:38:41 -07'00'

Christian Villarruel, SPECIAL AGENT
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed electronically this _____29_____ day of April 2022.

HONORABLE EILEEN S. WILLETT
United States Magistrate Judge